```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
LUZ MARIA CRUZ,                                              :
                                                             :
                              Plaintiff,                     :    20-CV-09882 (OTW)
                                                             :
              -against-                                      :    **OPINION & ORDER**
                                                             :
                                                             :
                                                             :
                                                             :
COMMISSIONER OF SOCIAL SECURITY,                             :
                                                             :
                              Defendant.                     :
                                                             :
                                                             :
-------------------------------------------------------------x
```

**ONA T. WANG, United States Magistrate Judge:**

**I.    Introduction**

On November 26, 2018, Plaintiff Luz Cruz filed a Title II application under the Social Security Act ("SSA") for a period of disability and disability insurance benefits alleging an onset date of January 1, 2013. (ECF 16 at R. 157-163) (SSA Administrative Record, hereinafter "R."). On May 8, 2019, Plaintiff's application was denied after an initial review. (R. 68-73). On July 11, 2019, Plaintiff requested a hearing before Administrative Law Judge ("ALJ") Angela Banks. (R. 80-81). On December 18, 2019, an administrative hearing was held before the ALJ. (R. 38-49). By written decision dated February 11, 2020, the ALJ found that Plaintiff was not disabled under the Social Security Act during the relevant period through December 31, 2017. (R. 9-31). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (R. 19-25). The ALJ concluded that Plaintiff did not have the residual functional

1

capacity ("RFC") to perform her past relevant work but was still able to perform other work that exists in the national economy. (R. 25-26). On February 7, 2020, Plaintiff appealed to the Appeals Council, which denied the review of the ALJ's decision on September 29, 2020. (R. 154-156).

Plaintiff brings her appeal of the ALJ's February 11, 2020, decision against the Commissioner of Social Security ("Commissioner"), alleging that the ALJ's decision failed to consider Plaintiff's "sever[e] emotional and psychological impairments" and "severe agoraphobia and a tendency to decompensate, marked by command hallucinations and suicide ideation," and "cherry-pick[ed]" medical opinions that supported a finding of only moderate impairments and limitations. (ECF 1 ¶ 11-14) (Complaint, hereinafter "Compl."). On February 9, 2021, the parties consented to my jurisdiction. (ECF 13). The parties submitted a joint stipulation of facts detailing Plaintiff's medical history and the administrative hearing testimony, which I incorporate by reference. (ECF 13) (Joint Stipulation, hereinafter "Stip.").

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, the Commissioner's Motion for Judgment on the Pleadings is **GRANTED**, and the decision of the Commissioner of Social Security is affirmed without remand pursuant to 42 U.S.C. § 405(g).

**II.     Background**

   A.   *Plaintiff's Medical History*

Plaintiff was 48 years old at the onset of her alleged disability. (R. 226-227). Plaintiff has a sixth-grade education (R. 203), and she worked as a home caregiver (R. 203). On March 9, 2017, Plaintiff was diagnosed with "psychosis, unspecified type," and was found to have been

hearing voices for the past eight years. (R. 350). On March 17, 2017, Dr. Natalia Markova diagnosed Plaintiff with marked mood dysregulation and increased activity possibly indicative of mania. (R. 352). On September 11, 2017, Dr. Uchechukwu Nnamdi assessed Plaintiff as being at a "chronically elevated" risk of suicide due to a past history of attempted suicide by poisoning and "ongoing paranoia." (R. 366). On November 27, 2017, Dr. Cohen diagnosed Plaintiff with bipolar disorder, panic disorder, agoraphobia and post-traumatic stress disorder. (R. 277). From 2018 to 2019, Plaintiff received continuous treatment from Dr. Nnamdi, whose mental status examination revealed that Plaintiff had a sad mood with a "full/appropriate affect" but with noted "intact concentration/attention." (R. 305-686).

    B.   *Treatment with Dr. Markova*

On March 9, 2017, Plaintiff was diagnosed with "psychosis, unspecified type," and was found to have been hearing voices for the past eight years. (R. 350). Additionally, those notes stated that she had expressed recent suicidal ideation and reported feeling unsafe in crowds and on public transportation. (R. 350).

On March 17, 2017, Dr. Markova diagnosed Plaintiff with marked mood dysregulation and increased activity possibly indicative of mania. (R. 352). Plaintiff followed up for medication management in April, May, and July 2017, and denied any suicidal intent. (R. 354, 357, 361). Dr. Markova reported there was no evidence of paranoia. (R. 354, 357, 361). Plaintiff's mental status findings were as follows: in March, her thought content indicated paranoia, but in April, May, and July, her thought content was unremarkable (R. 352, 355, 358, 362); in March, Plaintiff's mood was sad, and her affect was congruent (R. 352); in April, May, and July, Plaintiff's mood was "so-so," and her effect was full. (R. 355, 358, 362). Otherwise, Plaintiff

3

appeared appropriately groomed. (R. 351, 355, 358, 362). Her attitude was cooperative, and her behavior was calm. (R. 351, 355, 358, 362). Plaintiff's thought process was concrete. (R. 352, 355, 358, 362). She reported chronic auditory hallucinations. (R. 352, 355, 358, 362). Plaintiff was alert, and her cognition and attention were intact. (R. 352, 355, 358, 362). Her insight was impaired, her judgment was fair, and her impulse control was good. (R. 352, 355-56, 359, 362).

    C.   <u>Treatment with Dr. Nnamdi</u>

On September 11, 2017, Dr. Nnamdi assessed Plaintiff as being at a "chronically elevated" risk of suicide due to past history of attempted suicide by poisoning and "ongoing paranoia." (R. 366). The assessment also stated that Plaintiff "is not an imminent risk of self-harm" as she denied any suicidal thoughts. (R. 366). Plaintiff stated that she was doing okay and had improved significantly. (R. 364). Plaintiff's mental status examinations show the following: Plaintiff appeared well-groomed (R. 366, 369); her attitude was cooperative, and her behavior was appropriate (R. 366, 369); her speech was normal (R. 366, 369); her mood was euthymic, and her affect was "full/appropriate" (R. 366, 370); her thought process was "logical/goal-directed" (R. 366, 370); she showed no hallucinations but delusion[1] (R. 366, 370); she was alert and oriented (R. 366, 370); her cognition, attention, and concentration were intact (R. 366, 370); she showed no suicide ideation (R. 366, 370); her insight and judgment were fair, and her impulse control was "good/intact." (R. 366, 370).

Plaintiff continued under the care of Dr. Nnamdi from 2018 to 2019. Plaintiff first reported auditory hallucinations, restlessness, and insomnia. (R. 380). She later reported that

---

[1] In November 2017, Plaintiff's thought content was unremarkable. (R. 366, 370).

4

she felt better (R. 385, 390, 395) and her mental status findings were largely unchanged since 2019 (R. 318, 329, 339, 421-22, 451-52, 521).

    D.   *Treatment with Dr. Cohen*

In September 2017, Plaintiff saw consultative examiner Daniel Cohen, a psychologist. Plaintiff's mental status examinations show the following: Plaintiff was cooperative, and she had an adequate manner of relating (R. 275); she was fairly groomed and appropriately dressed (R. 275-76); her posture was tense, and her motor behavior was restless, but her eye contact was appropriate (R. 276); her speech was fluent and clear, and her thought processes were coherent and goal-directed; she showed no evidence of hallucinations (R. 275); her mood and affect were anxious (R. 276); her sensorium was clear, and she was oriented to time, place and person (R. 276); her attention and concentration and memory were mildly impaired (R. 276); her cognitive functioning was below-average, and her general fund of information was limited (R. 276); her insight and judgment were fair (R. 276). Dr. Cohen manifested Plaintiff with marked limitations with respect to the following: regulating emotions, controlling behavior, and maintaining well-being. (R. 281). However, Dr. Cohen's psychiatric examination also found that Plaintiff had mildly impaired attention and concentration as well as memory skills. (R. 277).

    E.   *The ALJ's Decision*

The ALJ applied a five-step analysis and concluded that Plaintiff was not disabled under the SSA. (R. 16). The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017. (R. 17). The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2013, through her date last insured of December 31, 2017 (R. 17), and Plaintiff's impairments of

5

depressive disorder and anxiety disorder were severe. (R. 17). However, the ALJ found that these impairments did not qualify as disabilities since Plaintiff did not meet the requirements under the SSA's Listing of Impairments ("Listings"). (R. 18). The ALJ found that Plaintiff's limitations were only moderate, not extreme or marked, in understanding, remembering, or applying information, in interacting with others, in concentrating, persisting, or maintaining pace, and in adapting or managing herself. (R. 18).

Based on Plaintiff's medical history, the ALJ found that Plaintiff had the mental RFC to perform a full range of work at all exertional levels but with limitations, and that she could perform other work that existed in the national economy. (R. 19-27). Specifically, Plaintiff had the mental RFC to perform work that required her to understand, remember, and carry out instructions consistent with occupations that can be learned in up to thirty days. (R. 19). Plaintiff also had the mental RFC to tolerate occasional interaction with the public and to interact appropriately with supervisors and co-workers. (R. 19).

### III. Analysis

#### A. Applicable Law

**1. Standard of Review**

A motion for judgment on the pleadings should be granted if the pleadings make it clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c). However, a court's review of the commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the commissioner and whether the correct legal standards were applied. 42 U.S.C.A. § 405(g). Substantial evidence is more than a mere scintilla but requires the existence of "relevant evidence as a reasonable mind might accept as

adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a reasonable factfinder would have to conclude otherwise." *Id*.

### 2. Determination of Disability

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation process, where the burden rests on the plaintiff for the first four steps and only after all four steps are satisfied does the burden then shift to the commissioner for the final step. 20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4). Second, an ALJ must find that the plaintiff's impairment is so severe that it limits her ability to perform basic work activities. *Id*. Third, an ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings, such that she may be presumed to be disabled. *Id*. Absent that, an ALJ must then determine the claimant's RFC, or her ability to perform physical and mental work activities on a sustained basis. *Id*. Fourth, an ALJ then evaluates if the plaintiff's RFC precludes her from meeting the

physical and mental demands of her prior employment. *Id*. If the plaintiff has satisfied all four of these steps, the burden then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. *Id*.

    B.  <u>Analysis of ALJ's Decision</u>

Plaintiff rests her appeal upon four issues with the ALJ's decision. Plaintiff claims that: (1) the ALJ's decision on RFC did not accurately reflected her limitations; (2) the ALJ erred in failing to consult with a medical expert regarding her RFC since the record was devoid of any analysis (or any recent analysis) of functional capacity by a physician or other expert; (3) the ALJ failed to properly evaluate her impairments under Listings 12.04 and 12.06; and (4) the ALJ improperly cherry-picked evidence. (Stip. 15).

**1. The ALJ's Decision on Plaintiff's Mental RFC Accurately Reflected Plaintiff's Limitations.**

When evaluating the persuasiveness of different medical sources, an ALJ must consider supportability, consistency, the medical source's relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c(b)(2). The most important factors are supportability and consistency. *Id.* "Supportability" is a consideration of the "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). The more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be. *Id.*

The ALJ found an accurate mental RFC at step five of her analysis regarding Plaintiff's limitations. Plaintiff contends that the first hypothetical posted by the ALJ did not accurately reflect her marked limitations with respect to regulating emotions, controlling behavior, and maintaining well-being. (Stip. 16-17). Here, the ALJ adequately analyzed the supportability and consistency of Dr. Cohen's opinion. The ALJ properly found that Dr. Cohen's opinion that Plaintiff had *marked* limitations was unpersuasive because it was not supported by the record. (R. 24, 277). In the record, Dr. Cohen's own examination conflicted with his own finding since his examination showed Plaintiff had only *mild* limitations to maintain attention and concentration. (R. 24, 277).

Indeed, the ALJ considered all of Dr. Cohen's opinion in her decision, since she also found that Dr. Cohen's opinion that Plaintiff's mental status improved and was normal in most respects was persuasive because it was consistent with the record. (R. 24). It was also consistent with Dr. Markova's opinions. Dr. Markova reported that Plaintiff's hallucinations had resolved (R. 363), and Plaintiff had a better mood, improved sleep, and felt better. (R. 357, 363, 364, 368). Plaintiff's mental status findings also showed that her effect was full, she was alert, oriented, and her cognition and attention were intact. (R. 355, 358, 362, 366, 370).

Plaintiff contends the ALJ's decision on Plaintiff's mental RFC is inaccurate because the ALJ failed to consult with a medical expert regarding her mental RFC. (Stip. 16). An ALJ has the discretion to decide whether to obtain the opinion of a medical expert. 20 C.F.R. § 404.1513a(b)(2). An ALJ is not under an obligation to seek additional evidence in advance of rejecting a claim when there are no gaps in the record. *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (holding that an ALJ has no duty to seek additional evidence where medical reports

9

already in the record showed that the claimant was capable of working). Here, there was no need for additional information by a medical expert as the current record evidence showed that Plaintiff had intact concentration and attention, and that Dr. Cohen found only a moderate impairment of her ability to maintain concentration and attention. (R. 277).

Plaintiff further contends that based on the testimony by a vocational expert ("VE"), she had marked limitations. VE Joseph Atkinson testified that an individual off task 20% or more in an eight-hour workday would be unemployable. (Stip. 17). The VE stated that Plaintiff would be able to perform alternative unskilled jobs such as Laundry Worker, Kitchen Helper, and Marker 2. (R. 26). The VE stated that an individual who would be off task 20% of the time in an eight-hour workday would be precluded from all competitive employment. (R. 26). However, even following the VE's testimony, being "precluded from all competitive employment" does not necessarily make Plaintiff "unemployable" or "have marked limitations."

**2.   The ALJ Properly Evaluated Plaintiff's Impairments under the Listings.**

To meet the requirements of the Listings, a plaintiff must show an extreme limitation in one, or marked limitations in two, of the following areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpart P, Appendix 1, §§ 12.04, 12.06. An ability to do a wide range of daily activities suggests a claimant's mental-health conditions may not meet the severity of any of the Listings. *McGonagle v. Kijakazi*, No. 22-CV-637, 2022 WL 17724696, at *2 (2d Cir. Dec. 16, 2022). These activities include, but are not limited to, "prepar[ing] simple meals," "driv[ing]," "play[ing] video

games," "attend[ing] medical appointments," "getting along well with providers and staff," "spen[ding] time with friend[s] and family," and "tak[ing] public transportation." *Id.*

Here, the ALJ's analysis of Plaintiff's impairments was supported by substantial evidence. First, the ALJ acknowledged Plaintiff's allegations that she had difficulty remembering, following instructions, completing tasks, and taking medications without reminders. However, the ALJ further found that Plaintiff "carried out routine activities such as preparing meals and shopping, attending doctor's appointments, conveying information to care providers, and following instructions from her providers." (R. 18, 277, 350, 354, 357, 364, 368). Second, the ALJ found that Plaintiff had a moderate limitation of her ability to interact with others such as "shopping, spending time with family and friends and attending church." (R. 18, 211, 213, 277). Third, the ALJ found that Plaintiff's mental status findings showed no problems with her concentration and attention. (R. 18, 352, 354-55, 357-58, 361-62, 364, 366, 370). Fourth, the ALJ found that Plaintiff was able to handle her self-care and personal hygiene. (R. 19, 277). The record reflects that Plaintiff was "routinely described as pleasant and cooperative, and always appeared well-groomed and with adequate hygiene." (R. 352, 354-55, 357-58, 361-62, 364, 366, 370).

### 3. The ALJ Properly Evaluated All of Plaintiff's Medical Records.

An ALJ may not "cherry-pick" evidence by "improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." *Jacobs v. Saul*, 482 F. Supp. 3d 23, 27–28 (E.D.N.Y. 2020). However, this does not mean that an ALJ is required to accept or reject a medical expert's opinion in its entirety. *Annabi v. Berryhill*, No. 16-CV-957, 2018 WL 1609271, at *16 (S.D.N.Y. Mar. 30, 2018). What is required is that an ALJ explains the basis for

her findings with sufficient specificity to enable the court to conduct a meaningful review. *Withus v. Saul*, No. 18-CV-10923, 2021 WL 2102270, at *11 (S.D.N.Y. May 19, 2021).

The ALJ properly evaluated all of Plaintiff's medical records and considered the persuasiveness of opinions from all medical sources. Plaintiff contends that the ALJ's decision was deficient with respect to her selective incorporation of parts of the consultative examination report of Dr. Cohen. (Stip. 26). Here, the ALJ explained her reasoning for accepting the well-supported portions of Dr. Cohen's opinion, while rejecting portions that were unsupported by the record. The ALJ also provided specific medical facts and other evidence in support of her reasoning. The ALJ noted that Plaintiff was diagnosed with an unspecified persistent mood disorder, but she presented calm and in good control with medication. (R. 21). The ALJ also evaluated Dr. Markova's opinion and found that Plaintiff was improving. (R. 22). Dr. Cohen did find that Plaintiff showed marked limitations in regulating emotions, controlling behavior, and maintaining well-being. (R. 277). However, as the ALJ correctly pointed out, Dr. Cohen's opinion on Plaintiff's mental limitations was inconsistent with his examination findings and the overall record, and thus was unpersuasive.

Plaintiff argues that the treatment notes of Dr. Nnamdi and the consultative examination report indicate "severe mental illness characterized by a preoccupation with suicide, hallucinations, mood regulation problems, coupled with an irrational fear of traveling in public." (Stip. 27). However, from 2017 to 2019, Dr. Nnamdi noted that Plaintiff's condition was improving over time. The objective record as a whole and her daily activities indicated that Plaintiff's mental impairments were well controlled. (R. 24).

**Iv.     Conclusion**

Accordingly, for the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, the Commissioner's Motion for Judgment on the Pleadings is **GRANTED**, and the decision of the Commissioner of Social Security is affirmed without remand pursuant to 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated: February 24, 2023
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge